**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SANDRA NEWTON,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:06-CV-1542-AJB** |
| **v.** | : | |
| | : | |
| **MICHAEL ASTRUE,** | : | |
| ***Commissioner of Social*** | : | |
| ***Security Administration,*** | : | |
| | : | |
| **Defendant.** | : | |

**O R D E R A N D O P I N I O N**[1]

Plaintiff Sandra Newton ("Plaintiff") brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits under the Social Security Act ("the Act").[2] For the reasons stated below, the undersigned **REVERSES**

---

[1] The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. [*See* Doc. 13; Dkt. Entry dated July 24, 2007]. Therefore, this Order constitutes a final Order of the Court.

[2] Title II of the Social Security Act provides for federal disability insurance benefits. 42 U.S.C. § 401 *et seq.* Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for supplemental security income benefits for the

the Commissioner's denial of benefits and **REMANDS** the case to the Commissioner for further proceedings in accordance with this opinion.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI on December 17, 2002, alleging disability commencing on November 8, 2002. [*See* Record (hereinafter "R") R51-54]. On May 23, 2003, the Commissioner denied Plaintiff's application for benefits. [R20, 22-25]. Plaintiff then sought reconsideration, which also was denied. [*See* R21, 26-31]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). [R32]. An evidentiary hearing was held on July 7, 2005. [R220-34]. The ALJ issued a decision on January 25, 2006, denying Plaintiff's claims on the grounds that Plaintiff was able to perform her past relevant work as it is actually and generally performed. [R11-19]. Plaintiff then sought review by the Appeals Council and on March 10, 2006,

---

disabled. Title XVI claims are not tied to the attainment of a particular period of insurance disability. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Under 42 U.S.C. § 1383(c)(3), the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI. In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI. However, different statutes and regulations apply to each type of claim. Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.



AO 72A (Rev.8/82)

the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. [R5-10].

Plaintiff then filed an action in this Court on June 21, 2006, seeking review of the Commissioner's decision. *Sandra Newton v. Joanne B. Barnhart,* Civil Action File No. 1:06-CV-01542. [Doc. 2]. The Commissioner filed an answer and transcript on June 20, 2007. [Docs. 8-9]. The matter is now before the Court upon the administrative record and the parties' pleadings, briefs, and oral argument, and is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STATEMENT OF FACTS

### *A. Plaintiff's Past Work*

In the 15 years prior to Plaintiff's application for disability benefits, Plaintiff engaged in the following employment: (1) a data entry clerk from April 1986 to June 1987; (2) an assembler from March 1989 to July 1989; (3) an electronic assembler from July 1989 to January 1995; and (4) a general office clerk and an officer assistant from April 1997 to June 2000.[3] [R76]. As a data entry clerk from April 1986 to July 1987,

[3] Plaintiff listed her jobs from April 1968 until June 2000. [*See* R76]. The Court only summarizes Plaintiff's work from the past 15 years because this is generally the relevant time period for determining past relevant work. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).



AO 72A (Rev.8/82)

Plaintiff entered, corrected, and retrieved customer files. The job required her to use machines, tools, or equipment. Plaintiff had to walk for 2 hours in the day and sit for 8 hours. Plaintiff was not a supervisor in this job. [R82]. As an electronic assembler for Boeing from December 1988 to January 1995, Plaintiff wired and soldered panel boards and built wire harnesses. [R63, 96]. In an 8-hour day, Plaintiff stood for 5 hours, walked and crouched for 1 hour, handled, grabbed and grasped big objects for 4 hours, and wrote, typed, or handled small objects for 4 hours. The heaviest that she lifted was 50 pounds, and she frequently lifted 25 pounds. [R63]. In the office clerk positions after Boeing, Plaintiff answered phones and performed filing, general office work, and data entry. [R96, 224-25]. Plaintiff stopped working because she was having problems with her legs, specifically pain form her rear to her ankles. Plaintiff stopped doing her office assistant jobs because of her tendinitis, carpal tunnel syndrom, and her cyst on her wrist. [R225-26].

*B. Plaintiff's Medical History*

Medical notes from the DeKalb Medical Center indicate that on December 15, 2002, Plaintiff complained about sharp chest pain. The medical notes indicate that she also experienced a cough, indigestion, heart burn, and back pain, and she had arthritis. [R144]. Plaintiff was diagnosed with chest pain, abnormal EKG, and uncontrolled



AO 72A
(Rev.8/82)

hypertension. [R145]. Plaintiff was encouraged to lose weight when her blood pressure was controlled. [R132]. Plaintiff was discharged on December 17 and told to follow up at a clinic. [R135].

Plaintiff was admitted to the DeKalb Medical Center on February 24, 2003, because of rectal bleeding. [R103]. Following an upper endoscopy and colonoscopy, Plaintiff was found to have diverticula bleed on the right side. [R101-02]. Upon discharge from the DeKalb Medical Center, Plaintiff was diagnosed with GI bleed secondary to diverticulosis,[4] anemia, and hypertension. Plaintiff was told to follow up with her primary care physician and to return if she continued to bleed. [R98].

On March 17, 2003, Plaintiff was diagnosed with a benign cyst in her left breast. [R158].

On April 17, 2003, Dr. Diana Whiteman evaluated Plaintiff for the Commissioner. [R161-63]. Plaintiff complained of left arm numbness and tingling in her left hand in feet, high blood pressure, bilateral knee pain, low back pain, chest pain,

---

[4] Diverticulosis is the presence of an abnormal pouch (the diverticulum) in the intestinal wall. Diverticula develop because of high or abnormal pressure distribution in the colon, causing pouches of the intestinal lining to bulge outwards through small defects in the colon wall. *See* Medline Plus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/000257.htm (last visited Mar. 31, 2008).



AO 72A
(Rev.8/82)

shortness of breath, headaches, and joint pain. [R161]. Plaintiff had full range of motion in her neck and no discomfort. Her heart had a regular rhythm and rate without murmurs or chest pain. Plaintiff's lungs were clear without wheezes, rales, or rhonchi, and Plaintiff did not exhibit shortness of breath or coughing. Plaintiff had limited range of motion in her knees. Plaintiff had some limitations of range of motion in her back. Her flexion was 0 to 70 degrees; extension was 0 to 20; right later flexion was 0 to 20; left lateral flexion was 0 to 25; and right and left rotation were both 0 to 30. Plaintiff had 5/5 motor strength in all lower and upper extremities except in her quadriceps, which had 4/5 strength because of "guarding" from knee pain. Neurologically, Plaintiff's light touch sensation was intact in the trunk and extremities while deep tendon reflexes were hypoactive but symmetrical. Plaintiff ambulated without an assistive device. [R162]. Plaintiff's EKG was normal while x-rays revealed normal vertebral bodies, an enlarged heart, clear lung fields, and no masses. Plaintiff was given the following diagnosis: chronic low back pain, "probably osteoarthritis," osteoarthritis of both knees, hypertension with cardiomegaly (enlargement of the heart),[5] and possible gastroesophageal reflux disease ("GERD"). [R163].

---

[5] Unless otherwise specified, all definitions of medical terms have come from the Medline Plus medical dictionary. *See* Medline Plus Dictionary, http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last visited Mar. 31, 2008).



AO 72A
(Rev.8/82)

Plaintiff went to Grady on August 6, 2003, for pain in her left hip and leg, which she had been experiencing for four to six months. [R188]. Plaintiff's left knee was tender and had decreased flexion. Plaintiff was diagnosed with arthritis in both knee joints. [R187]. Plaintiff was then referred to the orthopedic clinic. [R185].

At the orthopedic clinic on August 15, Plaintiff presented with symptoms of a left meniscus tear and knee pain complaints. Plaintiff had effusion (the escape of fluid by rupture or exudation) but no valgus (turned outward)/varus (turned inward) deformity. Her range of motion for extension was 10 degrees and for flexion was 50 degrees. Plaintiff was positive for crepitation (a grating or crackling sound or sensation), and her motor strength was 5/5. Plaintiff was diagnosed with left knee pain, joint space narrowing, and degenerative joint disease. Plaintiff was told to exercise and lose weight, to take Tylenol, and to follow up in six to eight weeks. [R184].

On August 22, 2003, Dr. John Heard, a state agency consultant, completed a physical residual functional capacity ("RFC") assessment. Dr. Heard found that Plaintiff: (1) could occasionally lift or carry 50 pounds; (2) could frequently lift or carry 25 pounds; (3) could sit, stand, or walk 6 hours in an 8-hour day; and (4) had unlimited ability to push or pull. [R190]. Dr. Heard found that Plaintiff could: (1) frequently balance and stoop; and (2) occasionally climb, kneel, crouch, and crawl. [R191].



AO 72A
(Rev.8/82)

Dr. Heard found no visual, manipulative, environment, or communicative limitations. [R191-92]. Dr. Heard found that Plaintiff's complaints about her knee pain and walking and sitting ability were partially credible because there were some limitations on ROM, tenderness of the left knee, and mild to moderate pain on touch of the "S1" joint.[6] [R194].

Dr. Silver performed a physical RFC assessment on August 25, 2003, and found that Plaintiff could: (1) occasionally lift/carry 50 pounds; (2) frequently lift/carry 25 pounds; and (3) sit, stand, or walk for 6 hours in an 8-hour day. Dr. Silver found no limitations in Plaintiff's ability to push or pull. [R198]. Also, Dr. Silver found no postural, manipulative, visual, communicative, or environmental limitations. [R199-201]. Finally, Dr. Silver found that Plaintiff was partially credible because she had some pain and decreased range of motion, but she could perform the level of work described in the assessment. [R202].

A September 26, 2003, outpatient referral form indicated that Plaintiff had lower back and lower extremity pain. Plaintiff was referred to a physical therapy lower back

[6] The S1 joint is the first sacral (part of the spinal column directly connected to the pelvis) vertebrae of the spine. *See* 5-P Attorneys' Dictionary of Medicine Scope 1, text accompanying Fig. P-19.



AO 72A (Rev.8/82)

program. [R186]. Plaintiff then had a physical therapy assessment on October 17, 2003. Plaintiff described her pain as aching and burning, which was exacerbated by bending, sitting, rising, walking, being prone and relieved by the progression of the day, Motrin, and leaning forward to walk. [R181].

Plaintiff went to Grady urgent care on November 20, 2003, complaining of stomach pain and pain on her buttocks. [R176]. Plaintiff was diagnosed with a "HSV" on her buttocks and told to return in two weeks if it did not improve. [R175]. She was also diagnosed with GERD and told to eat a bland diet. [R175].

Plaintiff went to Grady on December 3, 2003. On this visit, Plaintiff complained of gastric burning, which was occasionally relieved by food and aggravated by Motrin. Plaintiff complained of pain in her back, which radiates to the back of her leg and calf. [R179]. She was assessed with controlled hypertension, gastric tenderness, and back sciatica (pain in the back). [R180]. On December 11, 2003, Plaintiff went to physical therapy at Grady. The PT note indicated that this was Plaintiff's first visit since October 17, and that she had no significant change. [R178]. Plaintiff returned to PT on January 2, 2004. She had a slight decrease in pain and no pain in her legs that day. [R173].



AO 72A
(Rev.8/82)

On March 4, 2004, Plaintiff went to Grady because her left leg was swollen and she worried there might have been a more serious pathology. Plaintiff's back pain was 2/10 while her left lower extremity pain was 6/10. Plaintiff had intact motion in her lower extremity, intact sensory response, difficulty turning over, and used a cane. [R169].

Plaintiff went to the Grady orthopaedic clinic on April 16, 2004, with chronic left knee pain and occasional swelling. Plaintiff reported taking Tylenol PM for some relief. Plaintiff reported a trigger finger (an abnormal condition in which flexion or extension of a finger may be momentarily obstructed by spasm followed by a snapping into place). An examination revealed minimal swelling in the left knee. Plaintiff was assessed with history of left knee pain and told to continue with physical therapy. [R172].

In May 2004, Plaintiff was seen for a painful headache at the Grady urgent care center. Plaintiff avoided light and noise. Plaintiff was diagnosed with a headache. [R167].

On July 22, 2004, Plaintiff arrived at the Grady eye clinic complaining of blurry vision. She was diagnosed with dry eye. [R210].



AO 72A
(Rev.8/82)

Plaintiff visited the Grady OB/GYN clinic on October 25, 2004, where she had her annual exam and reported a history of stress incontinence for one year. Plaintiff was diagnosed with stress incontinence, and told to return in three weeks. [R208-09].

Plaintiff returned to Grady on November 17, 2004. She was assessed with controlled hypertension, pain, and GERD. [R206-07].

On November 24, 2004, Plaintiff went to Grady urgent care with a cough and pain in her throat and chest. Plaintiff was told to follow up if cough persists. [R205].

Plaintiff went to the Grady orthopaedic clinic on February 18, 2005, with chronic knee pain, right trigger finger, and a cyst on her right wrist. Plaintiff's right knee had flexion to 90 degrees and full extension; her left knee had flexion to 75 degrees but full extension. Plaintiff was diagnosed with degenerative joint disease with the left knee greater than the right knee, a right trigger finger, and a ganglion cyst in her right wrist. Plaintiff was given steroid injections for her trigger finger and knee pain. Plaintiff was told to return to the clinic in four months. [R218]. An orthopaedic clinic note from March 18 indicated that Plaintiff was doing well and stated that she was to return in 4 weeks. [R217].

Plaintiff went to Grady for an OB/GYN appointment on March 21, 2005, where she complained of stress incontinence two times per day, and two to three instances of



AO 72A
(Rev.8/82)

nocturia (urination at night, especially when excessive). [R215]. Plaintiff was assessed with mixed incontinence and told to lose weight, and to modify her diet to avoid sodas, coffee, and tea. [R216].

Plaintiff went to Grady on April 6, 2005, where she complained of epigastric (relating to abdominal region) pain and fatty food intolerance. [R213]. Plaintiff was diagnosed with abdominal pain, possible gallstones. [R214]. Plaintiff returned to Grady on April 15, 2005, where she complained of increased ankle swelling since the previous week when her blood pressure medications were adjusted. Plaintiff was having right upper quadrant pain aggravated by eating fatty foods, and she had a rash under her breast. Plaintiff was also dizzy. [R211]. She was assessed with a rash, dizziness, controlled hypertension, increased right ankle swelling, and epigastric pain in right upper quadrant, ruled out gall stones. [R212].

*C. Evidentiary Hearing*

At the July 7, 2005, evidentiary hearing, Plaintiff testified that she was born in 1946, and she graduated from high school. [R231]. Plaintiff received additional training for general office procedures in 1965 or 1966, and she completed a certificate program for computer training. [R232].



AO 72A
(Rev.8/82)

Plaintiff testified that she just started using her cane again because her knees were collapsing on her. [R226-27]. Plaintiff indicated that she could stand and walk for one hour before she needed to sit. [R227]. After an hour, Plaintiff's knees and lower back began to bother her. [R227-28]. Plaintiff took over-the-counter pain medication, but she could not take too much because it affected her stomach. [R228].

Plaintiff stated that she could not sit for long periods of time because she experiences pain from her buttocks area down to her thighs and her lower back starts to hurt. [R229]. Plaintiff received steroid injections, which helped for a couple of months initially, but as she had more injections, they helped less and less. These injections now only provide short-term relief. [R230]. Plaintiff also stated that she had to urinate frequently because of her medication. [R231].

## III. ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the non-disability requirements set forth in § 216(i) of the Social Security Act through December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since November 8, 2002 (20 CFR §§ 404.1520(b) and 416.920(b)).

3. The claimant has the following severe impairments: hypertension, diverticulitis, and status post bilateral knee arthroscopy (20 CFR §§ 404.1520(c) and 416.920(c)).



AO 72A (Rev.8/82)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)).

5. Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work activity with the ability to frequently lift up to 25 pounds and the ability to stand, walk, and sit for up to 6 hours in an 8 hour work day.

6. The claimant is capable of performing past relevant work as data entry clerk, which is classified by the Dictionary of Occupational Titles as sedentary semi-skilled work; and office clerk, classified as light, semi-skilled work; and electrical assembler, classified as medium, semi-skilled work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR §§ 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from November 8, 2002 through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

[R16-18].

The ALJ explained these findings as follows. The ALJ noted that the medical evidence indicated that Plaintiff suffered from lower back pain and left arm numbness. The ALJ did not find the back impairment to be severe because x-rays and lab results did not confirm that Plaintiff had osteoarthritis in her lower back and although Plaintiff received follow up at Grady, Plaintiff did not receive medication for back pain. Also,



AO 72A
(Rev.8/82)

the ALJ found the numbness not to be severe because a neurological examination showed that she had light touch sensation in her extremities. [R16-17].

The ALJ found that Plaintiff's claims about her pain and limitations were not credible because the objective medical evidence showed that Plaintiff: (1) had full range of motion in her neck, full grip strength, and intact neurological functioning; (2) did not walk with an assistive device in Dr. Whiteman's presence; (3) did not have a recent prescription for an assistive device; (4) occasionally used over-the-counter medication for her pain; and (5) had full joint extension. The ALJ then gave significant weight to the limitations found by state agency medical consultants who found that claimant was capable of medium work, frequent lifting of up to 25 pounds and sitting, standing, and walking for up to 6 hours in an 8 hour day. [R17-18]. The ALJ finally noted that by comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work, Plaintiff could perform her past relevant work as it was actually and generally performed. [R18].

## IV. STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death



AO 72A
(Rev.8/82)

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of



AO 72A
(Rev.8/82)

impairments, which significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that the impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R.



AO 72A
(Rev.8/82)

§§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

## V. SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to the Commissioner's denial of Social Security benefits. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial



AO 72A
(Rev.8/82)

evidence" means more than a scintilla, but less than a preponderance. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI. CLAIMS OF ERROR

Plaintiff raises the following three issues: (1) whether the ALJ erred at step 2 by not considering certain impairments as "severe"; (2) whether the ALJ erred in formulating the RFC; and (3) whether the ALJ erred by failing to formulate the physical



AO 72A
(Rev.8/82)

and mental demands of Plaintiff's past relevant work. [Doc. 16]. The Court addresses each alleged error in turn.

## VII. DISCUSSION

### *A. Step 2: Severity of Impairments*

Plaintiff argues that the ALJ should have found the following impairments to be severe: low back pain, right ganglion cyst, and a right trigger finger. [Doc. 16 at 6-8]. Plaintiff argues that the low back pain is severe because the evidence of limited range of motion and rehabilitation at Grady suggest that it would have more than a minimal impact on her ability to function. [*Id.* at 6-7]. Plaintiff contends that the cyst and trigger finger is severe because Plaintiff testified that she stopped working due to carpal tunnel syndrome and a ganglion cyst on her wrist. She also claims that the ALJ's failure to discuss the condition constituted error. [*Id.* at 7]. Without evaluating these impairments, Plaintiff claims that the ALJ committed reversible error because he did not evaluate Plaintiff' disability claim at each step of the evaluation process pursuant to Social Security Ruling ("SSR") 86-8. [*Id.* at 8].

The Commissioner argues that the Court should follow the reasoning of *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993), and *Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987), in which the courts held that there was no reversible error at step



AO 72A
(Rev.8/82)

two if the ALJ failed to find certain impairments severe so long as the ALJ found one impairment severe. [Doc. 17 at 6]. The Commissioner contends that the ALJ's statement that he considered the impairments in combination is enough to demonstrate that he considered the lower back pain and the wrist impairments. [*Id.* at 6-7].

The Commissioner considers at Step 2 whether a claimant has an impairment or combination of impairments that is severe and that meets the duration requirement.[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is severe if the impairment or combination of impairments "significantly limits [a claimant's] physical or mental ability to do basic work activities."[8] 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not

[7] The duration requirement is as follows: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. This regulation does not require that the impairment last 12 months, but requires that the impairment either last or be expected to last for a continuous period of 12 months or more. *See* 20 C.F.R. § 416.905(a); *see also Haag v. Barnhart*, 333 F. Supp. 2d 1210, 1216 (N.D. Ala. 2004).

[8] Basic work activities are "the abilities and aptitudes necessary to do most jobs," which include physical functions, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to work situations, coworkers, and supervisors, and dealing with changes in the work setting. 20 C.F.R. §§ 404.1521(b)(1), (3)-(6), 416.921(b)(1), (3)-(6); *see also Davis v. Heckler*, 748 F.2d 293, 296 n.7 (5th Cir. 1984) (indicating that §§ 404.1520(c), 416.620(c) must be read in light of § 416.921(b)).



AO 72A
(Rev.8/82)

severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Soc. Sec. Ruling ("SSR") 85-28; *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) ("An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."). Thus, "[t]he severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28. The Eleventh Circuit and other circuits have described the severity standard as "de minimis." *See Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("Step two, then, is a de minimis screening device [used] to dispose of groundless claims . . . .") (citations and internal quotation marks omitted); *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) ("We have characterized this showing as 'de minimis,' but the mere presence of a condition is not sufficient to make a step-two showing.").

The Court concludes that the ALJ erred at step two in his treatment of the wrist cyst, trigger finger, and low back pain. First, the Court finds that the ALJ erred in



AO 72A (Rev.8/82)

finding that Plaintiff's back pain was not a severe impairment. The ALJ determined that Plaintiff's back pain was not severe because there were no x-rays or other lab tests that confirmed Dr. Whiteman's suspicions that Plaintiff suffered from osteoarthritis. [R18]. The Court's own review of the record concurs with the ALJ's determination that there were no x-rays or other tests that determined that Plaintiff suffered from osteoarthritis. Thus, substantial evidence supports the ALJ's finding that Plaintiff did not suffer from osteoarthritis.

That Plaintiff did not have osteoarthritis does not equate with a finding that Plaintiff did not have a severe impairment due to her back pain. Discounting the presence of a certain impairment does not render Plaintiff's back pain to be a non-severe impairment. Instead, the impairment must significantly limit the individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

Here, Plaintiff contends that her back pain was the impairment. The medical record shows that Plaintiff had limited range of motion in her back. [R162]. Dr. Whiteman diagnosed Plaintiff with low back pain, as did a Grady doctor. [R162, 180]. Plaintiff was referred to physical therapy for her back pain, [R186], where she complained of aching and burning pain from bending, sitting, rising, and walking, [R181]. Subsequent physical therapy visits determined that Plaintiff still had back pain.



AO 72A
(Rev.8/82)

[R173, 178]. Certainly, this evidence of limited range of motion and continued treatment for back pain suggests that Plaintiff's pain might have met the "de minimis" severity standard of step two. The Court recognizes that strength tests determined that Plaintiff's motor strength was 5/5, [R162, 184], and that she was not prescribed pain medication for her back and that she did not receive other medical treatment for her back pain beyond the physical therapy.[9] The ALJ did not analyze this evidence to determine whether Plaintiff's back pain constituted a severe impairment, and the Court cannot make this factual finding for him.

[9] It might be possible for the ALJ to conclude that under the de minimis standard of step two that Plaintiff did not suffer from a severe impairment. *See McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004) (finding the following evidence provided substantial evidence that back pain was a severe impairment at step two: (1) MRI revealed two herniated discs; (2) plaintiff received steroid injections in her lower back at painful trigger points; and (3) plaintiff's treating physician found back pain to limit plaintiff's functioning); *Siemers v. Shalala*, 47 F.3d 299, 301-02 (8th Cir. 1995) (finding substantial evidence supported ALJ's determination that back pain was not a severe impairment at step two where plaintiff was not credible due to minimal clinical findings, inconsistent statements about pain, the failure to seek regular medical treatment, the failure to take the full dosage of medication, and the daily activities were inconsistent with pain); *Colavito v. Apfel*, 75 F. Supp. 2d 385, 400-01 (E.D. Pa. 1999) (finding substantial evidence supported ALJ's determination that back impairment was not severe at step two where plaintiff could perform all household chores, there was minimal medical evidence of a back impairment, there was little evidence that impairment caused functional limitations, and plaintiff failed to go to physical therapy after two weeks). As discussed above, the ALJ did not discount Plaintiff's back pain, but instead found insufficient evidence of osteoarthritis.



AO 72A
(Rev.8/82)

Second, the Court finds that the ALJ failed to consider Plaintiff's wrist cyst or trigger finger in evaluating the severity of Plaintiff's impairments. Under the regulations and the Commissioner's Social Security Rulings ("SSRs"),[10] the ALJ must examine impairments and the combination of impairments to determine whether they were severe. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Although the ALJ clearly considered Plaintiff's hypertension, diverticulitis, and knee pain, [*see* R16-17], the ALJ's discussion of the severity impairments omits any discussion of Plaintiff's trigger finger and cyst.[11] This omission was error. *See Williams v. Barnhart*, 186 F. Supp. 2d

---

[10] The Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process. *See Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990); *see also Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (citing 20 C.F.R. § 402.35(b)(1)). Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *see also Salamalekis v. Commissioner of Social Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *State of Minn. v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

[11] The Court recognizes that the ALJ mentioned Plaintiff's left arm numbness when discussing Dr. Whiteman's report. [*See* R17]. The Court does not equate this numbness discussion with consideration of Plaintiff's cyst and trigger finger because: (1) the records referring to the trigger finger and cyst are from February 2005,



AO 72A (Rev.8/82)

1192, 1198 (M.D. Ala. 2002) (finding reversible error where ALJ failed to consider certain impairments); *see also Cameron v. Halter*, 6 Fed. Appx. 823, 824-25 (10th Cir. 2001) (finding error where ALJ failed to consider impairment at steps two and three); *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1194-95 (D. Kan. 2007) (finding ALJ's failure to consider impairment at step two and remaining steps was error); *Waters v. Astrue*, 495 F. Supp. 2d 512, 516 & n.3 (D. Md. 2007) (same).

The Commissioner essentially argues that any error at step 2 is harmless because the ALJ ruled in Plaintiff's favor at step two and continued with the evaluation process. Harmless error analysis is used when reviewing the Commissioner's final decision concerning disability benefits. *See, e.g.*, *Battle v. Astrue*, No. 06-16149, 2007 WL 2193546, at *6 (11th Cir. Aug. 1, 2007) ("Errors may be harmless if they do not prejudice the claimant.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *Miller v. Barnhart*, 182 Fed. Appx. 959, 964 (11th Cir. 2006) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."). When an error at step two is made, courts have determined that such an error may

---

[R218], while Dr. Whiteman's report is from April 2003, [R161-63]; and (2) there is no indication in the medical record that the trigger finger and cyst would have been associated with left arm numbness, especially the cyst, which was on the right wrist.



AO 72A (Rev.8/82)

constitute harmless error. For instance, the Sixth Circuit has held that the ALJ's failure to find additional severe impairments at step two "is harmless [error]" as long as the ALJ found at least one severe impairment and continued the sequential analysis and ultimately addressed all of the claimant's impairments in determining her residual functional capacity." *Swartz v. Barnhart*, 188 Fed. Appx. 361, 368 (6th Cir. 2006) (citing *Maziarz*, 837 F.2d at 244); *see also Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (finding no error where ALJ found some impairments at step two to be severe and considered other impairments at other steps in the process).

There is, however, no bright line rule that all errors at step 2 are harmless when the ALJ moves beyond step 2. Courts have specifically determined that an error at step two does not necessarily constitute harmless error. *See Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007); *Crider v. Barnhart*, 427 F. Supp. 2d 999, 1010 (D. Colo. 2006) (finding error in omitting impairment at Step 2 was not harmless because it might have impacted the ALJ's RFC determination); *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 518 (D. Md. 2002) ("Erroneous findings at Step Two usually infect the entire decision, since all of a claimant's impairments must be considered in combination at Steps Three, Four and Five."). Instead, courts examine whether the error at step 2 infected another portion of the evaluation process. *See Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1054



AO 72A
(Rev.8/82)

(E.D. Wis. 2005) (noting that an error in omitting an impairment as severe at step 2 will be harmless if the ALJ fulfilled his obligation at step 4).

The Court finds that the failure to fully examine Plaintiff's back pain at step two and failure to consider the wrist cyst and trigger finger at step two were not harmless error. There is no indication in the ALJ's decision that he considered Plaintiff's wrist cyst or trigger finger before rendering his decision. As a result, the Court finds that it is unlikely that he considered these impairments alone or in combination with any of the other impairments in the further steps of the evaluation process. Thus, the Court finds that the error at step two continued in the evaluation process because there is no indication that the ALJ considered these two impairments in combination subsequent to step two.[12]

The Commissioner's reliance on *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993), and *Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987), to support his position is of no assistance. [*See* Doc. 16 at 11-12]. The Eleventh Circuit in *Davis* held

---

[12] As for Plaintiff's back pain, the Court finds that the issue is closer because the ALJ referred to Plaintiff's back pain when making the RFC determination. [*See* R18]. Instead of determining whether the ALJ's treatment of Plaintiff's back pain at step two became harmless error thereafter, the Court will not decide the issue given the Commissioner's need to mention the trigger finger and the cyst in his analysis of step two and thereafter.



AO 72A
(Rev.8/82)

that the ALJ must consider the combined effect of a claimant's impairments at step two and throughout the disability determination process, *see Davis*, 985 F.2d at 532, while the Sixth Circuit in *Maziarz* held that failure to identify a condition at step two as severe was harmless error where the ALJ considered the condition in determining whether claimant could perform substantial gainful activity, *see Maziarz*, 837 F.2d at 244. These decisions are distinguishable because it is not clear that the ALJ considered certain impairments at other steps in the process. The Court recognizes that the ALJ stated that he considered the combination of impairments and the whole record in his steps three[13] and four analysis, [*see* R17], but the absence of any discussion of a cyst and trigger finger in the opinion undercuts the Commissioner's contention that the ALJ

---

[13] The Court is aware that the Eleventh Circuit has held the following statement is sufficient for the ALJ to show that he considered all impairments at step three: "the medical evidence establishes that [claimant] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (emphasis added in *Wilson*). The Court is not convinced that the ALJ considered all impairments after step two in the instant case despite his statements that he did consider the combination of Plaintiff's impairments, the entire record, and all symptoms, [*see* R17], when there is absolutely no statement in the ALJ's decision that he even reviewed medical evidence concerning Plaintiff's trigger finger and wrist cyst. Thus, the error at step two was not harmless where there is no indication that certain impairments were considered subsequent to step two. *Cf. Street v. Barnhart*, 340 F. Supp. 2d 1289, 1293 (M.D. Ala. 2004) (finding ALJ considered impairment where it was referenced in decision and ALJ indicated that considered impairments in combination).



AO 72A
(Rev.8/82)

actually considered these impairments. Without such a discussion, the Court cannot find that the *Maziarz* logic applies. Instead of guessing whether the ALJ considered these conditions, the Court finds that it is best to remand to the Commissioner to consider explicitly all impairments.

Accordingly, the Court finds that the ALJ committed reversible error by failing to consider Plaintiff' trigger finger and left cyst in determining whether Plaintiff could engage in substantial gainful activity.

*B. Residual Functional Capacity*

Plaintiff argues that the ALJ erred in making the RFC determination because he failed to consider Plaintiff's problems with her wrist and hands, which would have affected the RFC. Without this consideration, Plaintiff argues that the RFC determination was incomplete. [*Id.* at 9-10]. Defendant responds that the medical evidence provides substantial evidence to support the ALJ's RFC determination. [Doc. 17 at 8-11].

The RFC "assessment is made prior to, and used in, steps four and five of the five-part evaluation under 20 C.F.R. § 404.1520." *Tauber*, 438 F. Supp. 2d at 1374. The RFC is the most sustained work activity that a claimant can perform in an ordinary work setting on a regular and continuing basis despite his physical and mental



AO 72A
(Rev.8/82)

limitations. 20 C.F.R. § 404.945(a); SSR 96-8p. To evaluate the RFC, the ALJ must consider all of Plaintiff's impairments in combination. *See Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986); *see also* 20 C.F.R. § 416.945(a)(2) (indicating that the ALJ "will consider all of [claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe'"); SSR 96-8p (indicating that the RFC is based on "all of the relevant evidence in the case record"). In making the RFC assessment, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p. The RFC involves both exertional and nonexertional limitations.[14] *Id.*

The Court concludes that the Commissioner must re-evaluate Plaintiff's RFC. As discussed above in the discussion of the step two issue, it is unclear whether the ALJ

---

14 "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." In contrast, "[n]onexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength . . . . It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)." Also, the nonexertional capacity considers "the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." SSR 96-8p.



AO 72A
(Rev.8/82)

considered Plaintiff's trigger finger and cyst at all in determining whether Plaintiff was disabled. Therefore, the Court cannot find that the ALJ considered all of Plaintiff's impairments in combination before making the RFC determination.

Accordingly, the Court finds that the ALJ erred in formulating the RFC where the evidence does not demonstrate that he considered all impairments. On remand, the Commissioner should first consider the trigger finger and wrist impairments before formulating Plaintiff's RFC.

*C. Physical and Mental Demands of Plaintiff's Past Relevant Work*

Plaintiff asserts that the ALJ erred in evaluating Plaintiff's past relevant work because he did not determine the strength, endurance, manipulative ability, mental demands, and other requirements of Plaintiff's past relevant work. Plaintiff claims that the ALJ's reliance on the job descriptions in the Dictionary of Occupational Titles is insufficient to satisfy the requirements of SSR 82-62 or to satisfy the requirement that the ALJ consider the interaction between the person's impairments and the physical and mental demands of her past relevant work to determine whether she can still perform this work. Plaintiff contends that the ALJ needed to consult a vocational expert to make a detailed determination of Plaintiff's past relevant work. [Doc. 16 at 11-12].



AO 72A
(Rev.8/82)

The Commissioner responds that the ALJ considered the requirements of SSR 82-62 when he stated in his decision that he compared Plaintiff's RFC with the physical and mental demands of Plaintiff's past work before finding that Plaintiff could perform her past relevant work. [Doc. 17 at 12-13]. Also, the Commissioner argues that Plaintiff's argument about the ALJ needing to consult the VE at step four is misguided given the case law that states a VE is not required at step four. [*Id.* at 13].

Past relevant work "is work that [a claimant] has done within the past 15 years that was substantial gainful activity and that lasted long enough for [claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). To determine whether a claimant retains the capacity to perform her past relevant work, the Commissioner examines whether (1) the claimant has the capacity to perform the actual demands and job duties of a specific past job; or (2) the claimant has the capacity to perform the demands and job duties of the occupation as generally required by employers in the national economy. In making this second determination, the ALJ can use the Dictionary of Occupational Titles ("DOT") descriptions to define the job as it is normally performed in the national economy. SSR 82-61, 82-62; *see also* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see Andrade v. Sec't of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (citing cases for and agreeing with the proposition



AO 72A
(Rev.8/82)

that past relevant work includes the type of work claimant performed as it was generally performed in the national economy).

The Commissioner must obtain sufficient information about past work to determine whether the claimant can return to past relevant work. SSR 82-62. Specifically, the Commissioner states in his Rules that:

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived form a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience. . . . Persons with physical impairments (e.g., cardiovascular or gastrointestinal disorders) may have performed stressful tasks. This may also require a decision as to whether the impairment is compatible with the performance of such work. If more than one job was performed during the 15-year period, separate descriptions of each job will be secured.

SSR 82-62. When an ALJ finds that an individual has the capacity to perform his past relevant work, the ALJ's decision must contain the following specific findings of fact: (1) the individual's RFC; (2) the physical and mental demands of the past



AO 72A
(Rev.8/82)

job/occupation; and (3) that the individual's RFC would permit a return to her past work. *Id.*

The Court concludes that there was no reversible error in determining the physical and mental demands of Plaintiff's past relevant work. First, the Court rejects Plaintiff's statement that the ALJ should have consulted a VE at step four to make certain determinations. At step four of the sequential process, an ALJ may use a VE to determine whether "the claimant can perform his past relevant work." *See Davis v. Barnhart*, 377 F. Supp. 2d 1160, 1161-62 (N.D. Ala. 2005). However, an ALJ does not need VE testimony to determine that a claimant can perform his past relevant work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) ("[B]ecause the ALJ concluded that [claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary."). Thus, there was no error in the ALJ's decision to refrain from using a vocational expert.[15]

---

[15] The ALJ may consult a vocational expert at step four, and the Commissioner's Social Security Rules state that "it may be necessary" to use a vocational expert "[f]or those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed." SSR 82-61. Testimony from a vocational expert is not required, however. *See id.*



AO 72A
(Rev.8/82)

Second, the Court finds that the ALJ did not have to determine the physical and mental demands of Plaintiff's past relevant work as she actually performed them with great detail.[16] As stated above, the ALJ may determine whether Plaintiff can perform past relevant work as she actually performed it or past relevant work as generally required by employers in the national economy. When the ALJ examines whether a claimant can perform work as it was done in the national economy, the ALJ may rely on the DOT. *See* SSR 82-61. The ALJ can use the DOT to determine whether a claimant can work. *Fries v. Comm'r of Soc. Sec. Admin.*, 196 Fed. Appx. 827, 832 (11th Cir. 2006). The DOT description for a claimant's job category is "presumptively applicable to a claimant's prior work." *Andrade*, 985 F.2d at 1051 (quoting *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986)). In the instant case, the ALJ relied on the DOT in determining whether Plaintiff could perform her past relevant work. The DOT

---

16 The Court notes that there was sufficient information about Plaintiff's actual work as an electronics assembler. [*See* R63, 96]. However, the Court notes that the record was not sufficiently developed concerning the mental and physical demands about Plaintiff's actual clerical duties after 1995. Nowhere in the record does Plaintiff provide a detailed description about strength, endurance, manipulative ability, mental demands and other job requirements. Instead, she provides that she performed general office work, filing, and data entry. [R82, 224-25]. This information was insufficient to make a past relevant work determination concerning data entry and office clerk positions. *See* SSR 82-62. However, any error that existed would be harmless. Plaintiff's past relevant work included electrical assembler, and the ALJ found that Plaintiff's RFC permitted her to perform this past relevant work.



AO 72A
(Rev.8/82)

job descriptions provide information about the demands of jobs as they are actually performed in the national economy. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995) ("One purpose of the DOT is to classify identified job titles by their exertional and skill requirements."). Specifically the DOT occupational descriptions provide information about: "worker actions; the purpose or objective of these actions; machines, tools, equipment, or work aids used; materials processed, products made, subject matter dealt with, or service rendered; the nature and complexity of instructions followed; and the job tasks actually performed by the worker." *See* Dictionary of Occupational Titles, How to Find an Occupational Title and Code, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/HOW2FIND.HTM (last visited Mar. 27, 2008). This information is sufficient to describe the physical and mental demands of Plaintiff's past relevant work as it was actually performed in the national economy.

Plaintiff "may overcome the presumption that the [DOT's] entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Andrade*, 985 F.2d at 1051-52 (quoting *Villa*, 797 F.2d at 798). Plaintiff has not described why the DOT job titles relied on by the ALJ did not apply to her past relevant work because she has made no



AO 72A
(Rev.8/82)

attempt to argue that her duties were distinct from those in the DOT. As a result, the Court finds that the ALJ did not err in evaluating the strength and mental demands of the Plaintiff's past relevant work as it was generally performed in the economy because the ALJ relied on the DOT job descriptions. *See Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999) (noting that "[t]he ALJ may discharge [the duty to make explicit findings regarding the physical and mental demands of past work] by referring to the specific job descriptions in the [DOT] that are associated with the claimant's past work"); *Brinegar v. Barnhart*, 358 F. Supp. 2d 847, 858 (E.D. Mo. 2005) (noting that ALJ's investigation into demands of a claimant's past work was not limited by claimant's narrative description and finding that ALJ did not err in relying on a DOT listing); *Goodenow-Boatsman v. Apfel*, No. C-99-4776, 2001 WL 253200, at * 8 (N.D. Cal. Feb. 27, 2001) (noting that ALJ could rely on DOT to develop adequate documentation as required by SSR 82-62).[17]

---

17 The Court recognizes that courts have found that vague reference to the DOT is insufficient to show that Plaintiff could engage in past relevant work. *See Parsons v. Apfel*, 101 F. Supp. 2d 357, 363 (D. Md. 2000). In this case, the ALJ did not refer to specific job DOT tiles for the data entry, office clerk, and electrical assembler positions. [*See* R18]. The Court's review of the DOT indicates that the jobs do not have multiple classifications: data entry clerk position is at 203.582-054; office clerk position is at 209.562-010; and electrical assembler position for aircraft manufacturing is at 729.384-026. Thus, that the ALJ did not give specific references to the DOT classifications is inconsequential because there was only one classification for each job



AO 72A
(Rev.8/82)

Accordingly, the Court finds no error in the ALJ's use of the DOT in determining whether Plaintiff could perform her past relevant work. Although there was no error in this portion of the ALJ's analysis, as discussed above, the Commissioner will have to reevaluate whether Plaintiff can perform her past relevant work because he erred by failing to consider all of Plaintiff's impairments in the sequential evaluation process.

**VIII. CONCLUSION**

Pursuant to this Court's power to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g),[18] the Court hereby **REVERSES** the Commissioner's denial of disability benefits and **REMANDS** for the Commissioner to reevaluate Plaintiff's disability application.

Pursuant to the Eleventh Circuit's suggestion in *Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006), Plaintiff **SHALL** have until **ninety (90) days** after she receives notice of any amount of past due benefits awarded

---

description.

[18] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).



AO 72A (Rev.8/82)

to seek attorney's fees under the Social Security Act, 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, No. 07-11298, 2008 WL 73668 at * 1 n.1 (11th Cir. Jan. 8, 2008).

The Clerk is **DIRECTED** to enter judgment for Plaintiff.

**IT IS SO ORDERED AND DIRECTED**, this the 1st day of April, 2008.

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**



AO 72A (Rev.8/82)